UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES | Plaintiff |
| v. | Criminal Action No. 3:18-cr-46-RGJ |
| CHARLES CATER | Defendant |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Charles Cater ("Cater") moves to dismiss for vindictiveness. [DE 213]. The United States responded. [DE 223]. Cater replied. [DE 231].

**BACKGROUND**

A more exhaustive background has been previously set forth in this Court's pretrial orders [DE 195; DE 313] which are incorporated here.

In November 2016, the Drug Enforcement Administration's ("DEA") Louisville Field Division began investigating a drug trafficking organization ("DTO") "responsible for the importation and distribution of kilogram quantities of crystal methamphetamine, heroin, cocaine and marijuana into Louisville." [DE 140-2 at 489]. Cater's codefendant Javier Rodriquez ("Rodriguez") was the alleged head of the DTO. *Id.* Cater and his codefendant, Dwayne Castle ("Castle"), were alleged members of the DTO. [DE 140-1 at 484-95; DE 140-2 at 489].

A detective with the Louisville Metro Police Department and a special agent with the DEA applied for, received, and executed search warrants related to the DTO. [DE 140-1; 140-2]. Cater was interrogated by and made statements to law enforcement. [DE 161].

In March 2018, a federal grand jury returned a two-count Indictment against Cater, Rodriguez, and Castle. [DE 23]. Count 1 of the Indictment alleges conspiracy to distribute

methamphetamine and heroine. [*Id.* at 33]. Count 2 of the Indictment alleges use, possession, and discharge of a firearm during and in relation to a drug trafficking crime resulting in murder. [*Id.* at 34].[1]

In October 2020, Cater moved to suppress the statements he made to law enforcement. [DE 140]. In August 2021, a federal grand jury returned a seven-count Superseding Indictment. [DE 175]. Four of the counts in the Superseding Indictment are against Cater.[2] Count 1 alleges conspiracy to possess with intent to distribute controlled substances. *Id.* at 1019. Count 2 against Cater alleges use, possession, and discharge of a firearm during and in relation to a drug trafficking crime resulting in murder. *Id.* at 1020. Count 6 alleges possession of a firearm by a felon. *Id.* at 1024. Lastly, Count 7 alleges conspiracy to obstruct justice-witness tampering. *Id.*

In December 2021, the Court in part granted Cater's motion to suppress, allowing his pre-*Miranda* statements to be used only for impeachment purposes, and suppressed the rest of his statements. [DE 195].

Cater brought this motion, to dismiss the superseding indictment, in part for prosecutorial vindictiveness, in February 2022, before trial. [DE 213]. The court denied the motion in part and held its ruling on the motion to dismiss on prosecutorial vindictive grounds in abeyance, waiving the timing requirement and reserving defendant's right to bring this motion after trial.[3] [DE 260 at 2175-76]. Trial has now concluded; the jury found Cater guilty on Counts 1 and 6, and not guilty on Counts 2 and 7. Cater orally renewed his motion to dismiss for prosecutorial vindictiveness at the end of trial. The court thus considers this motion.

---

[1] Castle pleaded guilty before this Court to both counts against him in the indictment under a Rule 11(c)(1)(C) plea agreement. [DE 92].
[2] Rodriguez subsequently pleaded guilty before this Court to all the counts against him in the superseding indictment in an open plea. [DE 351].
[3] As discussed below, the Court discussed the rest of the arguments in the motion to dismiss, for grounds other than prosecutorial vindictiveness, in a later order.

## DISCUSSION

**I.    Motion to Dismiss for Prosecutorial Vindictiveness [DE 213]**

Cater seeks dismissal of the charges against him, counts 1, 2, 6, and 7 of the Superseding Indictment, for prosecutorial vindictiveness.[4] [DE 213]. Because the jury found Cater not guilty on Counts 2 and 7, his motion is essentially moot as to these Counts, and thus the Court does not further consider arguments about dismissing them.

   *i.    Standard*

"A defendant may establish prosecutorial vindictiveness through one of two approaches. First, a defendant may demonstrate 'actual vindictiveness,' i.e., he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights. This showing, however, is 'exceedingly difficult to make.'" *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). "Second, a defendant may establish that, in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's action." *Id.* (citing *United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980) (en banc)). Under this approach, "[a] court may only presume an improper vindictive motive when a reasonable likelihood of vindictiveness exists." *Id.* A claim of vindictive prosecution under this approach requires a showing that (1) "the prosecutor has some 'stake' in deterring the petitioner's exercise of his rights, and that [(2)] the prosecutor's conduct was somehow unreasonable." *United States v. Anderson*, 923 F.2d 450, 453–54 (6th Cir. 1991).

   *ii.    Discussion*

---

[4] Cater also argues that Count 2 is defective because it either fails to charge an offense or is duplicitous, and that Count 7 should be dismissed because it lacked probable cause. [DE 213-1 at 1477-87]. The Court analyzed these arguments and denied dismissal of the counts on these bases in a pretrial order. [DE 313 at 3041-47].

Cater argues that "while the Government's actions may not rise to the level of actual vindictiveness," these actions do rise to the level of a realistic likelihood of vindictiveness, because "the Government possessed the requisite stake in deterring his Motion to Suppress and acted unreasonably regarding the Superseding Indictment." [DE 213-1 at 1468].

Cater also argues that "a realistic likelihood of vindictiveness for the prosecutor's action" gives rise to a presumption of vindictiveness under *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013). [DE 213-1 at 1467]. *LaDeau*, however, allows this presumption only "under narrow circumstances," and merely permits, but does not require, a "district court [to] find that there is a 'reasonable likelihood of vindictiveness.'" *LaDeau*, 734 F.3d at 566. The "realistic likelihood of vindictiveness presumption" rarely applies to a prosecutor's pretrial decisions. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of societal interest in prosecution. An initial decision should not freeze future conduct." *United States v. Goodwin*, 457 U.S. 368, 382 (1982). When the presumption does arise, the burden shifts to the United States to either disprove it or justify the challenged action. *Bragan*, 249 F.3d at 482. Then, "[i]f the government fails to present evidence sufficient to rebut the presumption, the presumption stands and the court must find that the prosecutor acted vindictively. . . . [but i]f the government produces evidence to rebut the presumption, the defendant must prove that the offered justification is pretextual and that actual vindictiveness has occurred." *Id.*

### 1. Requisite Stake

Cater argues that the United States possessed the requisite stake, as evidenced by the response to his motion to suppress and the burden his motion to suppress placed on the United States. [DE 213-1 at 1468]. Cater argues that his earlier motion to suppress "was neither routine nor typical and ultimately led to the suppression of crucial evidence." [*Id.* at 1469]. Cater points

4

to the burden placed on the prosecution by the "potential success" of his motion to suppress. [*Id.* at 1470]. "The eventual suppression," Cater argues, "'inflict[s] a mortal blow' to the Government's ability to prosecute." [*Id.* at 1469-70 (quoting *LaDeau*, 734 F.3d at 569)]. Cater also argues that "the prosecutorial stake in discouraging a defendant from filing a pretrial motion may be 'considerable' if said filing would 'require increased expenditures of prosecutorial resources' or force the prosecution 'to do over what it thought it had already done correctly.'" [*Id.* at 1468 (citing *Blackledge v. Perry*, 417 U.S. 21, 27 (1974); and *United States v. Roach*, 502 F.3d 425, 444 (6th Cir. 2007)]. He does not specifically expand on this argument, and instead focuses on the burden his motion placed on the United States. The United States argues that "Cater's motion to suppress was routine, typical, and not particularly exceptional." [DE 223 at 1513]. The United States also argues that the Superseding Indictment responded to failed plea negotiations, the Court's suppression was not fatal to the case, and that the "Superseding Indictment was not done to punish Cater for exercising his rights." [*Id.*].

For his arguments, Cater relies heavily on *Ladeau*. Under *LaDeau*, however, "routine and minimally burdensome filings" are "unlikely to prompt a vindictive prosecutorial response." *United States v. LaDeau*, 734 F.3d 561, 568 (6th Cir. 2013). Routine filings, in this sense, include "pretrial motions to suppress evidence." *Id.* (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)) (internal quotations omitted). In *LaDeau*, "there was a realistic likelihood that LaDeau was being charged with a more serious offense in retaliation for his successful suppression motion" because, as a direct result of LaDeau's successful suppression motion, "there was no longer *any admissible evidence* that LaDeau had" committed the charged offense. 734 F.3d at 564–65 (emphasis added). In response to LaDeau's successful motion and five days before his trial was set to begin, the United States obtained a superseding indictment with a charge carrying heightened

5

mandatory minimum and statutory maximum sentences. *Id.* The court in *LaDeau* noted "that 'a court faced with vindictiveness allegations must assess the fact situation before it to see if the [vindictiveness] standard is met. . . . [because e]ach situation will necessarily turn on its own facts.'" *Id.* at 567 (quoting *Andrews*, 633 F.2d at 453–54 (*en banc*)). Additionally, a prosecutor's stake varies depending on the stage in litigation. *See United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005). The prosecution's "stake" is generally greater after trial when faced with an appeal, which might force it to "endure a complete new trial, or 'do over what it thought it had already done correctly." *Id.* at 776 (quoting *Goodwin*, 457 U.S. at 383). The prosecutor's stake is typically lesser at the pretrial stage, where a prosecutor would expect a defendant to invoke procedural rights which "inevitably impose some burden on the prosecutor." *Goodwin*, 457 U.S. at 381; *see also United States v. Ventura*, No. CRIM.A. 13-14-KSF, 2013 WL 2452723, at *6 (E.D. Ky. June 5, 2013) (prosecutor's stake is lesser at the pretrial phase).

Cater's motion to suppress is distinguishable from *LaDeau*. Here, the United States could not have filed the Superseding Indictment in response to the Court's ruling on the suppression motion, as the Superseding Indictment was returned four months before the Court's order. [DE 175; DE 195]. This is unlike *LaDeau*, where the United States acted in response to a successful suppression motion. 734 F.3d at 564. Additionally, the Court's ruling on the motion to suppress did not mean that there was no longer any admissible evidence against Cater—only that his statements to law enforcement could no longer be used in the case in chief against him. [DE 195; *see also* DE 153 (Order denying Cater's motion to suppress warrant evidence)]. Nor did Cater's motion to suppress 'force the prosecutor to do over what it thought it had already done correctly,' or require "duplicative expenditures of prosecutorial resources" here in the pretrial phase, where the prosecutor's stake is lesser. *LaDeau*, 734 F.3d at 569–70; *Goodwin*, 457 U.S. at 381.

6

Also unpersuasive is Cater's argument that "[t]he sheer length of the Motion" to suppress and supporting documents, and related preparation for the hearing, makes it exceptional and burdensome to the United States. [DE 213-1 at 1469]. While it may be inconvenient to respond to lengthy motions, this does not mean that they place a significant burden on the United States, "spur a vindictive prosecutorial response," or necessarily create the requisite prosecutorial stake. *See Goodwin*, 457 U.S. at 381 ("A defendant before trial is expected to invoke procedural rights at inevitably impose some 'burden' on the prosecutor"). Although Cater believed he was likely to succeed, he has not shown his motion to suppress inflicted a "mortal blow" which "eliminated [the United States'] ability to prosecute the charge alleged in the first indictment." *LaDeau*, 734 F.3d at 569. Therefore, the burden the motion to suppress placed upon the United States was not significant. *See, e.g.*, *United States v. Hefner*, No. 3:18-CR-136-PLR-DCP, 2019 WL 3386277, at *9 (E.D. Tenn. Apr. 29, 2019), *report and recommendation adopted*, No. 3:18-CR-136, 2019 WL 2571568 (E.D. Tenn. June 21, 2019) (burden was not significant because court had not ruled on motion to dismiss when the United States filed the superseding indictment; *United States v. Matish*, No. 4:16CR16, 2016 WL 3143829, at *3 (E.D. Va. June 2, 2016) ("Nor does the Government's behavior here concern the same issues present in *LaDeau*, 734 F.3d at 564, because the Court had not yet ruled on Defendant's pending motions when the Government sought to supersede the indictment."); *and United States v. McQuiddy*, No. 3:09-CR-00240-11, 2013 WL 317965, at *7 (M.D. Tenn. Jan. 28, 2013) ("At the time the Government filed the Ninth Superseding Indictment, the Court had not yet ruled on Defendants' Speedy Trial Motions. Therefore, the only 'right' in which the Government could have had a stake, was Defendants' right to file the Speedy Trial Motions."). Thus, Cater has not shown that the United States possessed the requisite stake in his prosecution.

*2. Reasonableness*

Cater argues that the United States' conduct was unreasonable related to the Superseding Indictment, which he argues adds charges and substitutes more severe charges all based on the same conduct and no new evidence. [DE 213-1 at 1470 (citing *United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001) ("a potentially vindictive Superseding Indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment.")]. The United States argues that the Court's subsequent suppression was not fatal to the case, and that the "Superseding Indictment was obtained following an impasse of plea discussions." [DE 223 at 1509]. The United States further argues that the "Superseding Indictment was not done to punish Cater for exercising his rights . . . . [i]t is merely a cleaning up of the language in the indictment in preparation for trial . . . [and] did not change the theory of the case nor bring longer mandatory maximums and minimums than what was initially charged." [DE 223 at 1513-14].

The "Due Process Clause is not offended by all possibilities of increased punishment," *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)), and "if the charges are brought simply as the result of failure of the plea-bargaining process, they are not vindictive." *Suarez*, 263 F.3d at 479.

Cater argues that Count 1 of the Superseding Indictment is unreasonable because it substitutes more severe charges based on the same conduct and no new evidence. [DE 213-1 at 1472-74]. He argues that Count 1 of the Superseding Indictment adds more severe charges because "the Government added drug types and drug quantities to those initially charged, specifically 400 grams or more of fentanyl and fifty (50) grams or less of marijuana," and drug types and quantities partially form the basis for an individual's potential sentence under the Sentencing Guidelines.

8

[DE 213-1 at 1473-74]. Cater compares the Superseding Indictment to that in *LaDeau*. [DE 213-1 at 1473]. However, as the United States argues, the Superseding Indictment in *LaDeau* was unreasonable because of *statutory* mandatory minimums and maximums, not the advisory sentencing guidelines. [DE 223 at 1515-16]. Sentencing guidelines are not binding on the Court, while the statutory minimums and maximums are. The change in Count 1 thus does not result in a necessarily more severe charge, and the United States' conduct related to this Count was not unreasonable.

Cater argues that Count 6 of the Superseding Indictment is unreasonable because it is a new charge with no new evidence to support it.[5] [DE 213-1 at 1476-77]. Count 6 charges possession of a firearm by a felon. [DE 175 at 1024]. Cater argues that the only new evidence related to this charge is a "Firearms Interstate Nexus Determination" ("Second Determination") that the United States did not request until after Cater filed the motion to suppress, and was not "new" evidence, as a determination had been made before ("First Determination"). [DE 213-1 at 1476]. He argues the Second Determination was simply "an effort to make it appear as though there was 'new' evidence justifying the addition" of Count 6. [*Id.* at 1476-77]. Cater references the potential ten-year sentence that this charge carries, but also argues that this potential sentence "is far less concerning than the Government's conduct is adding this charge." [*Id.* at 1477]. The United States argues that, although Count 6 of the Superseding Indictment is new, it is reasonable because the determination is new evidence. [DE 223 at 1517-18]. It is new evidence, the United States argues, because the First Determination, made to prove the element of "traveled in or affected interstate commerce," was incomplete before the Indictment. [DE 233 at 1517-18]. The

---

[5] The mere addition of new charges to deter a defendant from going to trial cannot support a vindictive prosecution claim. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *Goodwin*, 457 U.S. at 380; *United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002).

United States further argues that it requested the Second Determination to prove the same element of interstate commerce, but by a different agent so that she could be called at trial. [*Id.* at 1518]. The determinations, the results of which the United States obtained after the Indictment, reasonably established probable cause for the charge. *See Goodwin*, 457 U.S. at 381 ("In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.").[6] Thus, the United States' conduct related to Count 6 was reasonable.

With the Superseding Indictment, the prosecutor here did not "restart [the] prosecution from square one in order to prevent [the defendant] from 'going free.'" *LaDeau*, 734 F.3d at 570. Neither did the prosecutor "up[] the ante" against the defendant by filing additional or more serious charges following his pretrial motion. *See id.* at 569. Rather, the charges in the Superseding Indictment are largely the same, with two minor counts added after additional evidence was obtained. *See Goodwin*, 457 U.S. at 381 (at the pretrial stage, "the prosecutor's assessment of the proper extent of the prosecution may not have crystallized"). Additionally, the Superseding Indictment was obtained by a second prosecutor uninvolved "in the investigation, the original Indictment, or production of initial discovery, and who replaced the original prosecutor, who is no longer an Assistant United States Attorney." [DE 223 at 1515]; *see Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001) ("the involvement of two different prosecutors" is "relevant" to the

---

[6] Also, unlike in *LaDeau*, Count 6 (and Count 7) carries lesser statutory maximum punishments than the original charges. *See Roach*, 502 F.3d at 445 (finding additional charge in superseding indictment was not unreasonable, as "[t]he new charge, for one thing, was a less severe charge than those contained in the original indictment"); *see also United States v. LaDeau*, 734 F.3d 561, 570 (6th Cir. 2013) (noting "the conspiracy-to-receive count that was charged in the superseding indictment carries longer mandatory minimums and maximums than the possession count that was initially charged").

inquiry of prosecutorial vindictiveness). The United States' conduct related to the Superseding Indictment was reasonable.

Cater has not shown that the United States Attorney (1) has some stake in deterring Cater's exercise of his rights or (2) engaged in conduct that was unreasonable. *See Anderson*, 923 F.2d at 453–54. The circumstances of this case do not support a reasonable likelihood of vindictiveness. As a result, Cater's motion to dismiss [DE 213] is **DENIED**.

## CONCLUSION

For the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED that**

1. Cater's Motion to Dismiss Superseding Indictment [DE 213] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

December 13, 2022

Cc:     Counsel of Record

11